Ronald DORSEY, Petitioner–Appellant,

v.

Walter KELLY, Superintendent,
Attica Correctional Facility
Respondent–Appellee.

No. 843, Docket 96–2490.

United States Court of Appeals,
Second Circuit.

Argued Feb. 11, 1997.

Decided April 9, 1997.

David A. Lewis, The Legal Aid Society
Federal Defender Division Appeals Bureau,
New York City, for Petitioner–Appellant.

Eleanor J. Ostrow, Assistant District Attorney, New York County, NY (Robert M. Morgenthau, District Attorney; Mark Dwyer, Assistant District Attorney), for Respondent–Appellee.

Before: McLAUGHLIN, CALABRESI, and LAY, Circuit Judges.*

CALABRESI, Circuit Judge:

Ronald Dorsey appeals from an order of the United States District Court for the

---

* The Honorable Donald P. Lay, Senior Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Southern District of New York (Louis L. Stanton, *Judge*), dated May 17, 1996, dismissing without prejudice, for failure to exhaust his state remedies, his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. On appeal, Dorsey argues that he fairly called the state courts' attention to the nature and basis of his claim that he received ineffective assistance of counsel, and therefore that he exhausted his ineffective assistance claim. We agree, and for this reason, we vacate and remand this case for consideration of the merits of his petition.

## I. BACKGROUND

In February 1988, Dorsey was convicted after a jury trial of two counts each of first-degree sodomy in violation of N.Y. Penal Law § 130.50[1] and second-degree sodomy in violation of N.Y. Penal Law § 130.45 for forcibly sodomizing a thirteen-year old boy. At trial, the boy, whom Dorsey was alleged to have sodomized twice in two days, identified Dorsey as the man who assaulted him and described the assault. A doctor who examined the boy after the incident testified that the boy had a bruise near his anal opening consistent with anal intercourse, but did not have lacerations or tears in the lining of the anal canal. In addition, a police detective testified that the boy's underwear was stained with semen. The allegation that this semen could not have been the defendant's (or at least not exclusively the defendant's) is at the core of this case. Dorsey was sentenced to concurrent prison terms of eight and one-third to twenty-five years on the first-degree sodomy counts, and two and one-third years to seven years on the second-degree sodomy counts.

At sentencing, Dorsey moved *pro se* to set aside the verdict, arguing *inter alia,* that he received ineffective assistance of counsel. This motion was denied. Represented by new counsel, Dorsey then appealed. In addition to a brief by his new counsel, which argued that the evidence relating to the semen stain on the victim's underpants should have been excluded as irrelevant, Dorsey filed two *pro se* briefs in the Appellate Division, the first labeled "Supplimental Brief," and the second labeled "Brief in Traverse,"

in which he made various claims including that his trial counsel had provided ineffective assistance. The Appellate Division nevertheless affirmed Dorsey's conviction. *People v. Dorsey,* 166 A.D.2d 180, 560 N.Y.S.2d 296, 297 (1st Dept 1990).

Both through his attorney and *pro se,* Dorsey sought leave to appeal to the New York Court of Appeals. Leave to appeal was denied twice, once on December 4, 1990, *People v. Dorsey,* 76 N.Y.2d 1020, 565 N.Y.S.2d 770, 566 N.E.2d 1175 (1990), and a second time after reconsideration, on February 27, 1991. *People v. Dorsey,* 77 N.Y.2d 877, 568 N.Y.S.2d 920, 571 N.E.2d 90 (1991). After the second denial, Dorsey filed a petition for a writ of habeas corpus in United States District Court for the Southern District of New York. The district court denied Dorsey's petition on December 10, 1992. *Dorsey v. Kelley,* No. 92 Civ. 8943, 1996 WL 264743 (S.D.N.Y. May 20, 1996).

On appeal from the denial of that *pro se* petition, this court stated that although tests of the semen stain on the boy's underwear appeared to be inconclusive, the jury never heard testimony indicating the uncertain results of those tests. *See Dorsey v. Irvin,* 56 F.3d 425, 426 (2d Cir.1995). We noted that despite the inconclusive tests, the prosecutor had pointed to the underwear in his summation and had emphasized that the semen stain was evidence corroborating the charges. *Id.* Because of this, we vacated the denial of the habeas petition and remanded to allow Dorsey to amend the petition to include claims regarding the tests performed on the underwear. *Id.* at 426–27

Dorsey filed an amended petition for a writ of habeas corpus in the district court claiming, *inter alia,* that he had received ineffective assistance of trial counsel with respect to the semen stains. In support of this claim, Dorsey argued that defense counsel had failed to introduce the results of forensic tests (performed by a police department chemist before trial and contained in two reports) showing that the semen found on the complainant's underpants contained a substance, the "A antigen," that, although present in the body fluids of the complainant, was *not* present in Dorsey's body fluids. Be-

fore the district court ruled on his petition, Dorsey withdrew all his other claims.

Without addressing the merits of his ineffective assistance claim, the district court dismissed Dorsey's petition without prejudice on the ground that Dorsey's various filings in the state courts had not exhausted his state remedies. Specifically, the court found that, while Dorsey *had* claimed ineffective assistance of counsel in the state courts, he had failed to present adequately the factual basis for that claim as he now argues it in his federal habeas petition. He had not, the district court said, pointed to "the fact which gives significance to the laboratory results, namely, that the tests showed an antigen in the semen that could not have come from Dorsey, and therefore to his counsel's failure to use them." The district court thereafter issued a certificate of probable cause or appealability, dated July 8, 1996.

## II. DISCUSSION

■ We review a district court's denial of the writ of habeas corpus *de novo. Chalmers v. Mitchell*, 73 F.3d 1262, 1266 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 106, 136 L.Ed.2d 60 (1996).

■ It is beyond argument "that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). This requirement is a matter of federal-state comity and is codified in 28 U.S.C. §§ 2254(b) and (c). To satisfy the exhaustion requirement with respect to a claim, a defendant must "fairly present[ ]" that claim to the state courts so that the court has "a fair opportunity to consider the . . . claim and to correct that asserted constitutional defect in respondent's conviction." *Picard*, 404 U.S. at 275, 276, 92 S.Ct. at 512, 513. A petitioner has "fairly presented" his claim only if he has "informed the state court of both the factual

and the legal premises of the claim he asserts in federal court." *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir.1982) (en banc). To have done so, the petitioner "must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Id.*

■ A petitioner may satisfy the exhaustion requirement by presenting his federal claim in a *pro se* supplemental brief, even if he has an attorney. *See Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir.1992). Moreover, *pro se* pleadings are held to a less stringent standard than briefs by counsel, and are read generously, "however inartfully pleaded." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam); *see also Branham v. Meachum*, 77 F.3d 626, 628–29 (2d Cir.1996).

■ The question we consider is whether Dorsey's supplemental briefs to the Appellate Division [1] "fairly presented" the claim he made to the federal district court, namely, that he received ineffective assistance of trial counsel because his counsel failed to introduce the results of the scientific tests on the semen in the complainant's underpants that suggested that the semen could *not* have come exclusively from Dorsey, but could have come exclusively from the complainant. It is indisputable that Dorsey, in his briefs to the Appellate Division, raised the legal claim that he had not received effective assistance of trial counsel, and identified this as a federal constitutional claim. What is uncertain is whether he adequately articulated the same factual basis for this legal claim that he now asserts in his federal habeas petition.

■ Reading his *pro se* pleadings generously, as we must, we find that Dorsey presented his present claim to the New York courts and therefore exhausted his state remedies. Although Dorsey made numerous

---

1. To be exhausted, a federal claim must be presented to the highest state court capable of reviewing the claim. *See Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir.1990) (per curiam). But since Dorsey's papers in support of his application for leave to appeal have been destroyed by the state, there is no way to determine whether Dorsey presented the claim to the Court of Appeals. Under the circumstances, we will consider the claim exhausted if we find that he fairly presented it to the Appellate Division.

additional arguments and declarations in his briefs that were incoherent and/or erroneous, these meritless contentions cannot efface his multiple efforts to raise the very claim that is currently at issue.

First, in his filings in the state courts, Dorsey repeatedly contended that the test results of the semen stain showed that the semen on the underpants contained an antigen that could not have come from Dorsey, but could have come from the complainant. In his first *pro se* supplemental brief to the Appellate Division, he indicated that "[t]he result of the [blood] testing clearly shows that ... the substance found in the People [sic] evidence did not match that of [himself]," but instead came from the victim. Dorsey, furthermore, referred repeatedly to the test results, which he attached to his brief, as showing that "A" and "H" antigens were found in the semen on the underpants. He also twice encouraged the court to compare the report describing the antigens present in the underpants with the report describing the results of the blood test of the victim. To help the court make this comparison, Dorsey attached the reports and referred to them by their police-designated number.[2] In his brief, Dorsey did apparently confuse the tests of his saliva with the substance on the underpants. Thus, he seems to have argued more than once that the stain on the underpants was in fact saliva. But while so arguing, Dorsey again maintained that the presence of the "A" and "H" antigens in the stain demonstrated that the stain matched the victim. Dorsey reiterated this claim in his second supplemental brief, once more referring explicitly to the lab reports that showed a match between the antigens present in the victim's saliva and the antigens present in the semen stain.

Second, Dorsey adequately connected his ineffective assistance claim with his counsel's failure to introduce and use the test results. In his first supplemental brief, Dorsey made numerous claims that the prosecution engaged in misconduct by failing to make known the laboratory test results, though he often framed the claim in terms of the prosecution's presentation of evidence inconsistent with the results. In his "Questions Presented," Dorsey expressly linked this failure to the claim that he is now making in his habeas petition. He there stated that he was denied effective assistance of counsel because his counsel "had prior knowledge of the existance [sic] of these facts [the introduction of "false" evidence] and refuse[d] to make them known to the Court." Dorsey's claims against the prosecutor may be meritless, but this connection was a reasonable attempt by a *pro se* litigant to focus the court's attention on precisely the claim he is now making in federal court. This is especially clear when the connection is read in the light of what followed in Dorsey's brief: his argument that the blood test results showed that the semen stain *did not* "match" Dorsey and *did* "match" the boy; and the lab reports, which Dorsey attached.

Dorsey reiterated his ineffective assistance of counsel claim (and his claims against the prosecution) in his second brief to the Appellate Division, arguing, *inter alia,* that his counsel "fail[ed] to marshall all the facts and documents to prepare an adequate defense." Dorsey attached the lab reports to this brief as well, and referred to them repeatedly. The reports were the *only* relevant documents in his case. It is, therefore, difficult to imagine what argument Dorsey was making other than that his counsel had been ineffective for failing to introduce or use those reports. Finally, Dorsey contended in his conclusion that if "the lab Reports [had been] presented to the trial Court, there would have been a probability that the verdict would have been different." This statement, by itself, should have alerted the state court to the nature of Dorsey's claim, first, because it was clearly his counsel's role to introduce such evidence, and second, because Dorsey's wording closely follows oft-quoted language of *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984) ("The defendant must show that there

---

**2.** Dorsey had also made an analogous claim to the trial court. In support of his motion to set aside the verdict and for a new trial, for example, although Dorsey labeled the test results inconclu-

sive, he also stated in the same sentence that "the semen stains found in the under pants was that of the complainant [sic]."

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

### III. Conclusion

Since Dorsey adequately (1) claimed that he had been denied effective assistance of counsel in violation of the federal constitution, (2) indicated the exculpatory nature of the lab reports, and (3) connected his ineffective assistance claim with his counsel's failure (a) to introduce the lab reports and (b) to challenge those parts of the prosecution's evidence and summation that were inconsistent with those reports, we find that Dorsey "fairly presented" to the state courts the legal and factual basis of the claim that he is now making in his federal habeas petition. We consequently conclude that the district court erred in holding that Dorsey did not exhaust his state remedies with respect to this claim. Accordingly, we reverse and remand for consideration of the merits of Dorsey's habeas petition.